United States v. Beckton. May it please the Court, I'm Richard Crowthermal. I'm a solo practitioner from Raleigh, North Carolina. I represent the appellant defendant, Reggie Beckton in this case. Reggie Beckton is asking for a new trial, and I believe he deserves a new trial, primarily because the district court engaged in the wholesale exclusion of his testimony during the trial of his case without knowing what that testimony was going to be. I couched the issues in this case. I argued two issues, basically. I couched the first issue as the court having imposed an arbitrary and unnecessary rule of evidentiary presentation on Mr. Beckton. Specifically, Reggie Beckton was representing himself. He asked to testify. He asked to testify in the narrative. The district court said, no, you have to ask yourself a question, and then you have to answer that question out loud in front of the jury. Reggie Beckton couldn't wrap his mind around that. He asked if his stand-by counsel, his court-appointed stand-by counsel could ask him the questions. The district court said, no, you must ask yourself the questions, and then answer the questions out loud for the jury. He eventually could not do that, and the court would not let him testify. The second issue I presented as an improper choice between two constitutional rights. The court at the, towards the end of this exchange said, I will allow you to testify I will allow your stand-by counsel, Mr. Manning, to ask you questions instead of you asking yourself questions if you allow Mr. Manning to take back over the case from you. Reggie Beckton said, no, I want to represent myself. I saw that and argued it as a choice between his right to testify and his right to represent himself. The facts of the case are pretty simple. Reggie Beckton was accused of robbing two banks in the Wilmington, North Carolina area in August of 2010. There was a lot of pre-trial stuff that went on. He went through a few attorneys. He had a competency exam. They finally get to trial in September of 2012. At the beginning of the trial, he displays some dissatisfaction with his court-appointed attorney, Mr. Manning. He asked for a new court-appointed attorney. The district court judge says, I'm not giving you a new attorney. You've already had, this is your fourth or fifth one, I don't know which one, but you're not getting a new attorney. He says, okay, I want to represent myself. The judge eventually let him represent himself with Mr. Manning as a standby counsel. No error so far, according to you? Reggie Beckton argued that he wanted a continuance to prepare. You just told us one minute ago that you had two arguments. No error. I'm not asserting error. That's what I'm asking. No assertion of error yet. Reggie Beckton asserted error, but I didn't argue that on appeal for him. So they get past that. The judge says, okay, Mr. Manning is going to be your standby counsel. You're going to represent yourself. Reggie Beckton had also been disruptive throughout the proceedings such that he needed to be confined. He had to be restrained. They had set it up so that the jury couldn't see him in restraints. They'd put curtains around the table and stuff like that. He complained about that, making it difficult. Contention of error. Yeah, I'm not saying that was error. So anyway, they get into it, and eventually the government gets through its presentation of evidence. Reggie Beckton wants to present evidence. He wants to testify himself. He says, I want to testify ex parte. The judge says, what does that mean? He says, I want to give a narrative to the jury. The judge says, no, sir, you're going to testify by doing this question and answer format. You're going to ask yourself a question out loud, and you're going to answer it out loud. He just couldn't wrap his mind around that. Well, I understand that, but there's law from our sister circuits that says that's all right. It seems to me the district court gave an explanation for why we do that, to give the government an opportunity to object to the question before it was answered. How can we say that's an abuse of discretion? My response to that . . . They gave that explanation not only to your client, but also to the jury, that he was going to do question and answer format in the same way that the government did. My response to that, Your Honors, is it's a pretense, because the government had already demonstrated it could handle objecting when Mr. Beckton was saying something out of turn that was unexpected. They had just done that during the exchange between the judge and Mr. Beckton. That doesn't mean just because you were able to interrupt once that you could be able to do it in every instance? In any event, why should he be able to give narrative when the government wasn't able to? We're supposed to have an equal playing field here. The court could have done two things. It could have excused the jury, and it could have said, okay, let's have a voir dire, Mr. Beckton. What are you going to tell this jury right now? Let's just go through a little . . . That doesn't mean that is what he would tell the jury, because people say things in voir dire that's different. People tell you . . . your clients tell you one thing, and then they go up and testify to something else. I understand that, Your Honor, but at least Beckton would have been on notice. If he said, okay, I'm going to argue that you denied my motion, the jury's going to say, no, you're not going to argue that in front of the jury, and then Beckton's on notice. He's already on notice. The district court told him, look, I'm happy to have you testify. Then you have to do it by question and answer. Then he's on less strong grounds at this point is what I'm saying. The other thing the court could have done is they could have let Mr. Manning ask him the questions. The government cited a case in its . . . That goes to your second argument, right? I hear you on that, but it's not unusual. The district court usually, for example, requires just one lawyer to question witnesses. There's no indication that this was unreasonable or an abuse of discretion. If we get around that, we say, okay, there's no abuse of discretion with him having to ask and answer questions out loud. No abuse of discretion, but choosing which lawyer is going to be asking those questions, either himself or his standby lawyer. Well, that's the thing. Reggie Beckton asked if his standby counsel could do that, and the judge said no. The government cited a case . . . I thought the judge said yes if the standby counsel took over the case. If the standby counsel took over the case. Now, that's a different thing. Reggie Beckton said, no, I want to represent myself. Well, but then he wants to have two lawyers. Well, I would simply point out the government cited a case in its brief on page 22, United States v. Schwartz, where a very similar thing happened. You have a disruptive defendant who . . . we don't know what he's going to say. He asked to testify in the narrative. The district court says, no, we're going to have your standby counsel ask you the questions. We're going to use a question and answer format. Your standby counsel is going to ask you the questions and you're going to answer them. He didn't want to do that, but the district court forced it nonetheless. He appeals. On appeal, the Third Circuit says, no, that was fine. That was okay with that manner. So my point is, why couldn't they have done this in Reggie Beckton's case and just let him handle the case, just ask him the questions? But the court is entitled in its discretion to manage the case, not Mr. Beckton. Right, but . . . Just because certain conduct might go in another way often, the district court has discretion. It can go . . . you can decide one way on the issue, or they can decide another way on an issue, and they're still within its discretion. So just the fact that another court did it a different way doesn't mean that that is the requirement. No, but at least with Schwartz and with the Woods case I cited, those two defendants got a chance to put their story before the jury. He had a chance to put his story before the jury. For whatever reason, Reggie Beckton couldn't wrap his mind around this, asking himself a question out loud. Does the record show his education level? I don't recall that it does, Your Honor. I don't. But my point being that the pro se Reggie Beckton just didn't know how to deal with this, and he asked for amenity. He asked for some ways of getting it done, and the court denied it. It wasn't . . . as I remember the record, and help me on this, I thought that the district court pretty clearly said, you know, this is not a good idea, representing yourself. Warned him about it in pretty strong terms. Is that not right? It did, Your Honor, but representing oneself . . . So when you say he didn't get his, you know, his mind around it, I don't know exactly what else the district court was supposed . . . could do here, would . . . could be required to do. I mean, it's a constitutional right to represent oneself. That's the thing. He wanted to represent himself. He didn't want Mr. Manning to represent him for whatever reason, but he also wanted to get his story before the jury, and he was denied that opportunity. I mean, we're talking about the wholesale exclusion of his testimony. Nothing got before the jury. The jury only heard the government's case in this trial, and when that happens . . . He could have gotten his whole case in front of the jury by, one, doing one of two things, the district court told him. He could either ask and answer questions and not do a narrative, or he could have his standby counsel ask him the questions, but in that event, the standby counsel had to take over the trial. But as I understand it, as I read the record, the government's case is already on. I bet there's not much defense case, so there's not much of the trial left. Well, this is . . . He's going to have a real lawyer making closing argument for him. Doesn't sound like such a bad idea. Well, this is about a fair trial. You know, the government's case can be as strong as it wants . . . as it is, but Mr. Beckman still has a right to present his evidence and present his side of it. To be sure. But he has to do it like every other litigant. He has to do it consistent with the rules. Well, I don't know that these are rules. These are the rules that this judge imposed on this particular occasion, because as far as I know, other defendants have been allowed to testify in the narrative, and other defendants have been . . . at least the Schwartz case shows other defendants have been allowed to have their standby counsel step in temporarily to ask them questions and then step back out. Would you have the same objection to what occurred at trial, had the trial judge said that we're going to take an hour or a two-hour recess for you to prepare questions, and then I'm going to hold you to the question and answer format? In other words, in this case, it appears that the judge did sort of spring on him after the prosecution rested the obligation to immediately go to a Q&A format. I didn't see anything in the record that he had any prior notice a Q&A format was going to be required of him in testifying. So would your objection be the same if the court had given him time to prepare questions? Would you still have your argument, or would it be gone? I would say that Reggie Becton's argument, if that had occurred, would be a little more tenuous at this point. He would have been on less sure footing, I think. We're talking about abuse of discretion. You're saying the court would still have abused its discretion if it had given him notice of the Q&A format and had allowed him a substantial period of time to prepare his questions? I would say to you, I don't know that I would be arguing that issue if that had happened. It's kind of a spectrum. I thought that you said that Reggie Becton couldn't get his mind around it. So what assurance do we have if given two hours, he would have gotten his mind around it? It sounds to me like he didn't want to get his mind around it. I'm often dealing with a child, for example. They may say to me, I don't want to get my mind around it, but I will do so. With all due respect to the district court, and to this court, and to the government, the exercise shouldn't be, we're playing Simon Says here, and you didn't play it right, so I'm not letting you testify. The exercise should be, is Mr. Becton given every benefit to get his story before the jury? So you think that that makes it not an abuse of discretion if he's given an hour to prepare? I don't know that it's a black and white thing. I think we sort of slide towards the spectrum of it not being an abuse of discretion if he's given time to do that. And it is an abuse if he's not? Well I think there comes a point where, yeah, it becomes an abuse of discretion. In this case it was because, as Judge Keenan said, it sprung on him. He wasn't given time to So he had to do it right then and there. Did he ask for time to prepare? Did he say, well, you know . . . I believe he did. He said, I want time to prepare some questions that I will then ask myself. And from what I remember, there was a brief break, but it was only momentary. It was maybe 10 or 15 minutes. I can't remember exactly. He had 10 or 15 minutes, but he should have had an hour. And I think he was discussing . . . He had been complaining about not having enough time to prepare throughout. Right. But at that point, I didn't see an objection or a request for more time to prepare. Are you saying that he made a request for more time to prepare when the court imposed the Q&A format on him after the prosecution had rested? From what I remember, Your Honor, there was a discussion between Mr. Becton and Mr. Manning that lasted 5 or 10 minutes. I can't remember exactly when it came. But ultimately, Reggie Becton had two tries at trying to testify before the jury. Both of them were using this, ask yourself a question, answer the question out loud. I thought the question to you was, is there anywhere where he says, I need some time to prepare these questions? At the point where he and Judge Britt are going round and round about this, I can't remember if he specifically said, I need more time. I do believe at the beginning he said, if I could just have a few minutes to write down some questions. But ultimately, he never did that. He never got into it. So I don't know if that amounts to a request for more time or an objection, if that's what you're asking me. Ultimately, he didn't get the time he needed. You don't make that argument in your brief, do you? I don't, Your Honor. I simply say that the court shouldn't have imposed this ask yourself a question, answer it out loud rule, and then it shouldn't have presented him with the choice between having Manning take back over your case or not testify. Okay, let's try to break them out. Is the choice your problem, or suppose the district court had just said, you have to testify in question and answer form. He refuses to do so, and he says, I'm sorry, I'm not going to allow the testimony. Is that error? I believe I would still be arguing that on appeal as being error, because the court never asked Mr. Beckman, what are you going to say to the jury? You didn't know what he was going to say. Basically, it's wholesale exclusion of his testimony without knowing that he's about to say something impermissible. I think it's a requirement that he do that. I think the court needs to know that he's going to say something impermissible. His general acting out. His general, do you think that that happens in criminal cases? I do think. The court voir dires all the witnesses? Well, no, no, no, that doesn't happen. But when you're talking about the defendant himself testifying and a defendant who's acting out and a defendant who you don't trust to say something untoward in front of the jury, then I think it's appropriate to say, okay, what are you going to say in front of the jury? I'm going to try to protect your right to testify here, but I want to protect everything else, too, the government's case, too. I feel like that if you'd done that, you would be up here saying that he required him to give away his case. You shouldn't have been having to do that. I mean, it's – all right. I think we understand your argument. All right.  Thank you, Your Honor. Ms. Fritz. May it please the Court, my name is Christine Fritz. I'm from the Eastern District of North Carolina, representing the government in this matter. And the United States asked the Court to affirm the District Court's judgment in all respects. The defendant, Reggie Becton, is a man who has no respect for the law, for the criminal justice system, or the Court. After presiding over this case for more than 15 months, Judge Britt knew that. Drawing on his experience with the defendant, as well as the defendant's conduct throughout the trial, the judge was well within its discretion to insist that the defendant testify in a question-and-answer format to ensure that only relevant evidence was put to the jury and to ensure that the government had a chance to object and the Court had a chance to rule upon those objections. Now, because this decision was informed by all that the judge knew about the defendant at this point, it's important to appreciate a little bit the defendant that was before the Court. The Court was very familiar with the defendant's criminal history, his assaultive behavior on law enforcement officers, disrespect to the law. He was released from the Department of Corrections of North Carolina about less than two weeks before this offense. The Court was very familiar with the defendant's conduct while in prison awaiting his federal trial. He had multiple violations while in FMC Springfield for his psychiatric evaluation. He exposed himself at another jail. He was involved in a plot to escape Albemarle District Jail. He faked a medical emergency in the Wake County Jail, and he appeared to have medicine stockpiled to fake another emergency in the hopes that he would be taken to a local hospital. The defendant was disrespectful of the Court and threatened the Court's safety. After the initial motions hearing on September 4, 2012, and the selection of the jury, he was very agitated. He swore about the presiding judge, threatened to spit in his face, threatened to throw a chair at him, and he indicated that he was going to cause problems during trial. The defendant had three different attorneys appointed throughout this case. The first one he claimed a conflict of interest with. The second one he made vulgar and inappropriate sexual propositions to her. The third attorney, he filed a civil lawsuit in an effort to create a conflict with this attorney because he wasn't satisfied with this attorney either. And in response to the- Does the record show his education level? Yes, it actually does. In the September 4th hearing, it's reflected, well, the defendant claims that he has received an associates in criminal justice, and he has more than 400 hours of correspondence course, and that's on page two of that transcript. And in fact- Sorry, is it in the JA? It is not in the JA. Okay, so if we were trying to look it up, how would we go about that? It's on PACER, is that it? It's docket entry number 253. It's the transcript of the September 4th motions hearing, and it's on page two of that transcript. Also during that transcript, I believe at page 13- Was there a PSR prepared? There was a PSR prepared. That was not included in the joint appendix, and- What does the PSR say about education? But he had completed some correspondence courses. And he graduated from high school? I believe he claimed to have a GED. I'm not certain whether the probation officer was able to verify that. Okay. Thank you. But at that point, what the court had been presented was a defendant who claimed to have an associates degree in criminal justice. And the court appreciated that the defendant was smart. In fact, he even says to the defendant, you have some smarts. And I think that you filed this lawsuit in civil court against Mr. Manning to trump up a conflict of interest. But as far as we can tell, there's no lawsuit that's actually been filed that Mr. Manning has not received this lawsuit. And you're not getting a fourth attorney, not after the way you've been behaving. And another thing about this defendant is that regardless of whether he had counsel or was proceeding pro se, he refused to accept the court's rulings. He wanted to present the case in the issues how he wanted to present it, and he wanted the answers that he wanted. He filed many motions to dismiss based on delay, speedy trial, how things were handled at the state level, the constitutionality of the bank robbery statute. He wanted a few more months to determine how he was going to plead. He just wasn't ready to come to terms with his impending trial. What about the fact, Ms. Fritz, I understand. I mean, these are horrible situations for trial judges. I mean, I've had, as a trial judge, had defendants like this. You know, you're just in a terrible position. Nothing works when you try to do it. But what about the obvious solution, it seems to me, of giving him an hour or two to prepare? I know he didn't ask for it, but in terms of trial management, why wouldn't that have been the obvious solution? Here you have a person who is in a situation where something's been literally sprung on him. He was never told he was going to have to prepare his own questions and question himself. Then he's good to go, according to the court. He has to go out there and do it right away. Why wouldn't—and I'm not saying it's abuse of discretion not to, but why wouldn't the better practice have been to just say, we're going to take a recess for an hour, work on your questions, and you're going to be held to them when you come back? I mean, is it reasonable for a court to say, without any notice, you've got to do this Q&A and you've got to do it now, get the jury in? Is that reasonable? In this particular case, I would submit that the defendant's problem was not his inability to formulate a question. How do we know? Because— The court cut him off, so how do we know? Well, at one point, I believe this is 384— Did he ask the government witnesses questions? Yes, he did. Lots of questions. He did. But in terms of asking himself, you must admit it's an awkward situation where I have to say to myself, what is your name and where do you live? And then I say, my name is Barbara Keenan and I live at . . . I mean, you sound weird at the get-go. It is. So it's awkward, it's confining, and for a person who's never done it, it may take some time to prepare, don't you think? In this case, on page 384 of the JA, what's interesting is the defendant says, I will write out three questions for my lawyer and then he'll ask them to me. I don't think his problem in this case was the questions. His problem was that the court was not letting him get into what he wanted to get into. For example, when his second attempt to testify on page 380 of the JA, his response is, that will make it really difficult because you're trying to prohibit me from saying certain things and try and narrow it down in favor of one party. This is an equal beneficial thing. It's supposed to benefit both parties. It's called equal protection. His issue, the defendant's complaint, is that he's not permitted to get into the motions that he raises over and over again. He isn't supposed to make allegations of government corruption in front of the jury. He isn't supposed to point out, oh, well, I only had a few days to prepare for this case. That's not fair. And these are the things that he, in the brief period of time that he was testifying, those were the things that he brought up. And it wasn't the first time that the defendant had demonstrated an insistence on presenting things to the jury that were not for the jury's consideration. In the hearing on September 4th, he warns the court, well, I'm going to tell them that you all forced me to go to this trial. You all made the decision on my behalf. I didn't want to make. I'm not endorsing this decision. And if there was any doubt that he was intent on placing these concerns before the jury, look at the defendant's opening on pages 65 through 66. He tries to make the due process type argument. He brings up the state court proceedings. He tells the jury that his constitutional rights were violated because he has no attorney. He suggests that government counsel is dishonest. And again and again, when he is speaking to the, during the testimony of one of the government witnesses, page 99, the defendant objects to the testimony. And then he says, I object because this statute, the robbery statute, is unconstitutional. Again, this is a matter that had been ruled on by the court repeatedly,  Again, he tries to, when he's cross-examining witness Odom, he tries to revisit the outcome of the state case and how, well, the state charges were dropped. And the court tells him this is inappropriate. And at least on one occasion, the defendant tries to keep talking. And the court says, no, no, we are not getting into this. This is not relevant to this case. After the government rests, and while this is outside the presence of the jury, the defendant, again, is wanting to refile, reopen every single one of his motions. He was not willing to listen to the court. He was not willing to accept the court's rulings, the court's instructions. And when he took the stand, although it was admittedly an awkward format asking oneself a question, he had demonstrated through his education, through his questioning of the other witnesses, through his willingness to write up three specific questions for defense counsel, standby counsel, to ask him that it was not a problem that he was not prepared or not able to ask questions. The problem was that what he wanted to place in front of the jury was not proper. The court was aware of that, based on all of his experience with the defendant to this point, and strove to create a format that would allow the defendant to talk about the facts, to get in his side of the story, but also making sure that, again and again, these inappropriate themes were not returned to. And unless the panel has further questions, we ask that you affirm the judgment of the district court. He was exceedingly patient with this defendant. And under these circumstances, what he did cannot be said to be an abuse of discretion. Thank you. Sir, do you have any rebuttal? Briefly, Your Honor, I would just simply also say, and I haven't said this before, the other thing the district court could have done is obtain an offer of proof. It could have excused the jury and said to Mr. Beckman, okay, what is it that you were going to say to the jury? Go ahead, and then just let him ramble. And then it would have been on the record. And then this court would have something to sink its teeth into. This court would have a joint appendix with a lengthy transcript of what Mr. Beckman would have said to the jury. It could have gone through with a black magic marker and said, that's inadmissible, that's inadmissible, that's inadmissible, and then seen what's left, and then decided. You do have the problem, though, that Judge Motz alluded to earlier. When somebody is that irascible and that unpredictable, how do you have any assurance that he'd be saying the same thing if he were allowed to testify? I mean, I'm sure you've had clients like that. I've had clients like that, and they say things . . . There's no assurance that they're going to say that when they come in. So how would that have been any kind of a safety net for the court to make sure that this trial was going to proceed properly? Well, it would have been more than what we have now, Your Honor, which is speculation, basically speculation that Reggie Beckman was going to say something inadmissible to the jury. Right now we're just guessing based on his behavior, his distracted behavior in the courtroom leading up to that point, and we just don't know. And if you're basing . . . And based on things he'd already said to the court during the course of the proceedings and in his opening statement. But I will say that when I think it was the first try, when he was given a chance to testify in front of the jury, he started off by saying the issue here is what happened on August 17th or something to that effect. It's on page 8 of my brief. So he was starting to talk about the facts initially, and then the judge stopped him and said, no, that's not a question. You need to ask yourself a question. So it sounded like he was getting into the facts of the case as opposed to arguing his motions or his constitutional rights or whatever. We just don't know what he was going to say. So that's it. Thank you very much. Thank you, Your Honor. We will come down and greet the lawyers and then go to our last case. Counsel, I understand that you, too, have been appointed, and we very much appreciate your service. Thank you.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker